**ASK LLP**
Joseph L. Steinfeld, Jr., Esq.
(*Pro Hac Vice Pending*)
2600 Eagan Woods Drive, Suite 400
St. Paul, MN  55121
**Telephone**: (651) 406-9665 **Fax** (651) 406-9676

Edward E. Neiger, Esq.
Brigette G. McGrath, Esq.
151 West 46th Street, 4th Floor
New York, NY  10036
**Telephone**: (212) 267-7342   **Fax** (212) 918-3427
**e-mail**: bmcgrath@askllp.com

Attorneys for Plaintiffs, Arcapita Bank B.S.C.(c), et al.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Arcapita Bank B.S.C.(c), et al.[1]<br><br>Reorganized Debtors. | Case No. 12-11076 (SHL)<br><br>Chapter 11 |
| Arcapita Bank B.S.C.(c), et al.,<br>Plaintiffs,<br><br>vs.<br><br>Maples and Calder,<br>Defendant. | Adv. No. **Refer to Summons** |

**COMPLAINT TO AVOID TRANSFERS**
**PURSUANT TO 11 U.S.C. §§ 547, 548, AND 502 AND TO RECOVER**
<u>**PROPERTY TRANSFERRED PURSUANT TO 11 U.S.C. § 550**</u>

Arcapita Bank B.S.C.(c), et al. (the "Debtors"), the Reorganized Debtors (the

"Plaintiffs"), by and through their undersigned counsel, file this complaint (the "Complaint") to

---

[1] The "Reorganized Debtors" in these chapter 11 cases and, prior to the Confirmation Order and Falcon Confirmation Order (as defined below), the "Debtors," are: Arcapita Bank B.S.C.(c), Arcapita Investment Holdings Limited, Arcapita LT Holdings Limited, Windturbine Holdings Limited, AEID II Holdings Limited, Railinvest Holdings Limited, and Falcon Gas Storage Company, Inc.

avoid and recover transfers against Maples and Calder (the "Defendant"), and in support thereof allege upon information and belief that:

## NATURE OF THE CASE

1.      Plaintiffs seek to avoid and recover from Defendant, or from any other person or entity for whose benefit the transfers were made, all preferential transfers of property that occurred during the ninety (90) day period prior to the commencement of the Debtors' bankruptcy proceedings pursuant to 11 U.S.C. §§ 547 and 550.  Subject to proof, Plaintiffs also seek to recover all fraudulent conveyances pursuant to 11 U.S.C. § 548.  To the extent that Defendant filed a proof of claim or has a claim listed on the Debtors' schedules as undisputed, liquidated, and not contingent, or has otherwise requested payment from the Debtors or the Debtors' chapter 11 estate, (collectively, the "Claims"), this Complaint is not intended to be, nor should it be construed as, a waiver of Plaintiffs' right to object to such Claims for any reason including, but not limited to, 11 U.S.C. § 502 (a) through (j), and such rights are expressly reserved. Notwithstanding this reservation of rights, certain relief pursuant to section 502 may be sought by Plaintiffs herein as further stated below.

## JURISDICTION AND VENUE

2.      This court has subject matter jurisdiction over this adversary proceeding, which arises under title 11, arises in, and relates to cases under title 11, in the United States Bankruptcy Court for the Southern District of New York, Manhattan Division (the "Court"), Case No. 12-11076 (SHL), pursuant to 28 U.S.C. §§ 157 and 1334(b).

3.      The statutory and legal predicates for the relief sought herein are sections 502, 547, 548, and 550 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code")

and Rules 3007 and 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

4. This adversary proceeding is a "core" proceeding to be heard and determined by the Court pursuant to 28 U.S.C. § 157(b)(2) and the Court may enter final orders for matters contained herein.

5. Pursuant to Local Bankruptcy Rule 7008-1, Plaintiffs state that they consent to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

6. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1408 and 1409.

## PROCEDURAL BACKGROUND

7. On March 19, 2012 (the "Petition Date"), the Debtors, other than Falcon Gas Storage Company, Inc. ("Falcon"), each commenced a case by filing a voluntary petition for relief in this Court under chapter 11 of the Bankruptcy Code. On April 30, 2012, Debtor Falcon commenced a case by filing a voluntary petition for relief in this Court under chapter 11 of the Bankruptcy Code.

8. On March 22, 2012, the Court entered an order authorizing the joint administration of the chapter 11 cases for procedural purposes pursuant to Bankruptcy Rule 1015(b) [Docket No. 16].[2] On June 12, 2012, the Court entered an order, among other things,

---

[2] All docket items referenced are from Case No. 12-11076, under which the bankruptcy cases are jointly administered.

3

authorizing the joint administration of the Falcon chapter 11 case with those of the other Debtors [Docket No. 239].

9. On June 11, 2013, the Debtors filed the *Debtors' Second Amended Joint Plan of Reorganization of Arcapita Bank B.S.C.(c) and Related Debtors Under Chapter 11 of the Bankruptcy Code (With First Technical Modifications)* [Docket No. 1251] (the "Plan"). On June 17, 2013, the Court confirmed the Plan and entered the *Findings of Fact, Conclusions of Law, and Order Confirming the Second Amended Joint Plan of Reorganization of Arcapita Bank B.S.C.(c) and Related Debtors With Respect to Each Debtor Other Than Falcon Gas Storage Company, Inc. Under Chapter 11 of the Bankruptcy Code* [Docket No. 1262] (the "Confirmation Order"). On January 31, 2014, the Court entered the *Order Confirming the Second Amended Joint Plan of Reorganization as to Falcon Gas Storage Company Under Chapter 11 of the Bankruptcy Code* [Docket No. 1759] (the "Falcon Confirmation Order").

## THE PARTIES

10. Prior to the Petition Date, the Debtors and their non-debtor affiliates (the "Non-Debtor Affiliates," and collectively, with the Debtors, the "Arcapita Group") were leading global managers of Shari'ah-compliant alternative investments and operated collectively as an investment bank. The Arcapita Group's principal activities included investing on its own account and providing investment opportunities to third-party investors in conformity with Islamic Shari'ah rules and principles.

11. At all relevant times, Arcapita Bank B.S.C.(c) ("Arcapita Bank") was the corporate parent of the Debtors and the Non-Debtor Affiliates. Arcapita Bank was headquartered in Bahrain and regulated under an Islamic wholesale banking license issued by the

4

Central Bank of Bahrain. In addition to the Bahrain headquarters, the Arcapita Group had offices in Atlanta, London, Hong Kong, and Singapore.

12. Arcapita Investment Holdings Limited, Arcapita LT Holdings Limited, Windturbine Holdings Limited, AEID II Holdings Limited, and Railinvest Holdings Limited are Cayman Islands exempted companies.

13. Falcon Gas Storage Company, Inc. is a Delaware corporation, and its principal place of business is located at 75 14th Street, 24th Floor, Atlanta, Georgia 30309.

14. Upon information and belief, at all relevant times, Defendant provides legal services. Upon further information and belief, Defendant's principal place of business is located at 5th Floor, The Exchange Building, Dubai Int. Fin. Centre, Dubai, United Arab Emirates. Upon information and belief, Defendant is a business entity whose legal structure is presently unknown residing in and subject to the laws of the United Arab Emirates.

## FACTUAL BACKGROUND

15. Prior to the Petition Date, the Arcapita Group, as an investment bank, maintained business relationships with various business entities, through which the Arcapita Group regularly purchased goods and services.

16. As an investment bank, the Arcapita Group regularly purchased goods from various entities including vendors, creditors, suppliers, and distributors. The Arcapita Group, as an investment bank, also regularly paid for services used to facilitate its banking activities.

17. The Arcapita Group maintained an integrated cash management system pursuant to which the collection of funds generated by, and disbursements to cover expenses of, the Debtors and Non-Debtor Affiliates were centralized in a master collection/disbursement account at JPMorgan Chase Bank in the name of Arcapita Bank (the "Master Account"). In addition to

5

the Master Account, the Arcapita Group maintained bank accounts throughout the world for the purpose of facilitating the payment of the Debtors' and Non-Debtor Affiliates' expenses in foreign currencies, and certain subsidiaries maintained their own separate bank accounts for various business purposes (collectively, the "Local Disbursement Accounts"). Typically, all cash generated by the Debtors and Non-Debtor Affiliates flowed to the Master Account, and all expenses of the Debtors and Non-Debtor Affiliates, including payroll and rent, were paid from the Master Account, either directly to the ultimate recipient or through the Local Disbursement Accounts. Arcapita Group accurately recorded in its books and records any receipts and/or disbursements made on behalf of the Debtors and Non-Debtor Affiliates as intercompany transactions.

18. During the ninety (90) days prior to the Petition Date (the "Preference Period"), the Debtors continued to operate their business affairs, including the transfer of property, either by checks, cashier checks, wire transfers, ACH transfers, direct deposits, or otherwise to certain entities, including the Defendant.

19. Plaintiffs have determined that the Debtors made transfer(s) of an interest in the Debtors' property to or for the benefit of Defendant during the Preference Period through payments aggregating an amount not less than $147,757.90 (the "Transfer" and/or "Transfers"). The details of each of the Transfers are set forth on the Statement of Account, which is attached hereto and incorporated by reference as Exhibit "A." Such details include "Check Number," "Check Amount," "Check Clear Date," "Debtor Transferor(s)."

6

## **CLAIMS FOR RELIEF**

### COUNT I

**(Avoidance of Preference Period Transfers – 11 U.S.C. § 547)**

20. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein.

21. During the course of their relationship, the Debtors and Defendant entered into numerous agreements, which are evidenced by invoices, communications, and other documents (collectively, the "Agreements").

22. As identified in the Agreements, the Debtors purchased goods and/or services from Defendant.

23. Each Transfer was made to Defendant by the Debtor(s) identified on Exhibit "A" under the column heading "Debtor Transferor(s)." The Debtor Transferor(s) directed Arcapita Bank to make payments on their behalf, and each payment was recorded as an intercompany claim due and owing from the Debtor Transferor(s) to Arcapita Bank.

24. Each Transfer was paid from the Master Account or Local Disbursement Accounts described *supra.*

25. Each Transfer constituted a transfer of an interest in property of the Debtors as identified on Exhibit "A."

26. During the Preference Period, Defendant was a creditor at the time of each Transfer by virtue of supplying goods and/or services identified in the Agreements to the Debtors identified on Exhibit "A" under the column heading "Debtor Incurring Antecedent Debt" for which the identified Debtors were obligated to pay following delivery in accordance with the Agreements. See Exhibit "A."

27. Each Transfer was to or for the benefit of a creditor within the meaning of 11 U.S.C. § 547(b)(1) because each Transfer either reduced or fully satisfied a debt or debts then owed by the Debtors.

28. Each Transfer was made for, or on account of, an antecedent debt or debts owed by the Debtors to Defendant before such Transfer was made, as asserted by Defendant and memorialized in the Agreements, each of which constituted a "debt" or "claim" (as those terms are defined in the Bankruptcy Code) of Defendant prior to being paid by the Debtors. See Exhibit "A."

29. Each Transfer was made while the Debtors were insolvent. Plaintiffs are entitled to the presumption of insolvency for each Transfer made during the Preference Period pursuant to 11 U.S.C. § 547(f).

30. Each Transfer was made during the Preference Period. See Exhibit "A."

31. As a result of each Transfer, Defendant received more than Defendant would have received if: (i) the Debtors' cases were under chapter 7 of the Bankruptcy Code; (ii) the Transfer had not been made; and (iii) Defendant received payments of its debts under the provisions of the Bankruptcy Code. As evidenced by the Debtors' schedules filed in the underlying bankruptcy case as well as the proofs of claim that have been received to date, the Debtors' liabilities exceed their assets to the point the unsecured creditors will not receive a full payout of their claims from the Debtors' bankruptcy estates.

32. In accordance with the foregoing, each Transfer is avoidable pursuant to 11 U.S.C. § 547(b).

8

## COUNT II

### (Alternatively, To Avoid Fraudulent Conveyances
### Pursuant to 11 U.S.C. § 548(a)(1)(B))

33. Plaintiffs incorporate Paragraphs 1 through 19 as if fully re-alleged herein.

34. The global economic downturn and, in particular, the Eurozone debt crisis adversely impacted the Debtors and rendered them insolvent. Specifically, these events hampered the Debtors' ability to obtain liquidity from capital markets, reduced the Debtors' assets values, and rendered the Debtors unable to pay various debts as they came due, including the Debtors' $1.1 billion syndicated facility, which came due on March 28, 2012.

35. Within two years preceding the Petition Date, the Defendant received or was the beneficiary of the Transfers (the "Fraudulent Transfers") identified on Exhibit "A."

36. Each Fraudulent Transfer constituted a transfer of the Debtors' interests in property.

37. The Debtors' did not receive reasonably equivalent value in exchange for each Fraudulent Transfer because the Fraudulent Transfers paid for goods and/or services provided to the Non-Debtor Affiliates.

38. At the time of each Fraudulent Transfer, the Debtors (a) were insolvent or became insolvent as a result of the Fraudulent Transfer(s); (b) were engaged in business or a transaction, or were about to engage in business or a transaction, for which any property remaining with the Debtors was an unreasonably small capital; and/or (c) intended to incur, or believed that they would incur, debts that would be beyond their ability to pay as such debts matured.

39. In accordance with the foregoing, each Fraudulent Transfer is avoidable pursuant to 11 U.S.C. § 548(a)(1)(B).

## COUNT III

**(Recovery of Avoided Transfers and Fraudulent Transfers – 11 U.S.C. § 550)**

40.     Plaintiffs incorporate all preceding paragraphs as if fully re-alleged herein.

41.     Plaintiffs are entitled to avoid the Transfer(s) pursuant to 11 U.S.C. § 547(b) and Fraudulent Transfers pursuant to 11 U.S.C. § 548. The Transfers and Fraudulent Transfers are collectively referred to herein as "All Avoided Transfers."

42.     Defendant was the initial transferee of All Avoided Transfers or the immediate or mediate transferee of such initial transferee or the entity for whose benefit All Avoided Transfers were made.

43.     Pursuant to 11 U.S.C. § 550(a), Plaintiffs are entitled to recover from Defendant All Avoided Transfers, plus interest thereon to the date of payment and the costs of this action.

## COUNT IV

**(Disallowance of all Claims – 11 U.S.C. § 502(d) and (j))**

44.     Plaintiffs incorporate all preceding paragraphs as if fully re-alleged herein.

45.     Defendant is an entity from which property is recoverable under 11 U.S.C. § 550.

46.     Defendant is a transferee of All Avoided Transfers avoidable under 11 U.S.C. §§ 547 and/or 548.

47.     Defendant has not paid the amount of All Avoided Transfers, or turned over such property, for which Defendant is liable under 11 U.S.C. § 550.

48.     Pursuant to 11 U.S.C. § 502(d), any and all Claims of Defendant and/or its assignee, against the Debtors' chapter 11 estates or Plaintiffs must be disallowed until such time as Defendant pays to Plaintiffs an amount equal to the aggregate amount of All Avoided Transfers, plus interest thereon and costs.

49. Pursuant to 11 U.S.C. § 502(j), any and all Claims of Defendant, and/or its assignee, against the Debtors' chapter 11 estates or Plaintiffs previously allowed by the Debtors or Plaintiffs, must be reconsidered and disallowed until such time as Defendant pays to Plaintiffs an amount equal to the aggregate amount of All Avoided Transfers.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court grant them the following relief against Defendant:

As to Counts I through IV, that the Court enter a judgment against Defendant:

A. That All Avoided Transfers avoidable under 11 U.S.C. §§ 547 and/or 548 in the total aggregate amount of not less than $147,757.90 as identified on Exhibit "A" be avoided;

B. That All Avoided Transfers, to the extent that they are avoided pursuant to 11 U.S.C. §§ 547 and/or 548, be recovered by Plaintiffs pursuant to 11 U.S.C. § 550;

C. Disallowing, in accordance with 11 U.S.C. § 502(d), and Claims held by Defendant and/or its assignee until Defendant satisfies the judgment;

D. Disallowing, in accordance with 11 U.S.C. § 502(j), any Claims held by Defendant and/or its assignee until Defendant satisfies the judgment;

E. Awarding pre-judgment interest at the maximum legal rate running from the date of the Complaint to the date of judgment herein;

F. Awarding post judgment interest at the maximum legal rate running from the date of judgment herein until the date the judgment is paid in full, plus costs;

11

                                  Pg 12 of 12

    G.    Requiring Defendant to pay forthwith the judgment amount awarded in favor of Plaintiffs; and

    H.    Granting Plaintiffs such other and further relief as the Court deems just and proper.

Dated:   March 17, 2014

        By:   ASK LLP

        /s/  Brigette G. McGrath
        Edward E. Neiger, Esq.
        Brigette G. McGrath, Esq.
        151 West 46th Street, 4th Fl.
        New York, NY  10036
        Telephone: (212) 267-7342
        Fax: (212) 918-3427
        e-mail:  bmcgrath@askllp.com

        and

        Joseph L. Steinfeld, Jr., Esq., MN SBN 0266292
        Kendra K. Bader, Esq., MN SBN 0391229
        2600 Eagan Woods Drive, Suite 400
        St. Paul, MN  55121
        Telephone: (651) 406-9665  ext. 870
        Fax: (651) 406-9676
        e-mail: kbader@askllp.com

        Attorneys for Plaintiffs, Arcapita Bank B.S.C.(c), et al.